Taft, J.
At the outset it may be observed that appellants expressly- disclaimed any purpose of contending that the petitions and applications for rehearing should be treated as complaints pursuant to Section 524, General Code, that the railroad’s service to Delaware is not adequate. Cf. New York Central Rd. Co. v. Public Utilities Commission, 157 Ohio St., 257, 105 N. E. (2d), 410.
It is the position of appellants that the railroad’s letter of August 28, 1952, was an application for abandonment of service and that appellants were entitled to a hearing thereon as provided in Section 504-3, General Code. This contention raises the question whether the railroad could eliminate the stop of its southbound train No. 421 at Delaware without complying with the provisions of Sections 504-2 and 504-3, General Code, which read:
“Section 504-2. No railroad as defined in Section 501 of the General Code, operating any railroad in the state of Ohio, and no public utility as defined in Section 614-2a of the General Code furnishing service or facilities within the state of Ohio, shall abandon or be required to abandon or withdraw any main track or tracks or depot of a railroad or main pipe line, gas line, *334 telegraph line or telephone toll line, electric light line, water line or steam pipe line, or any portion thereof, pumping station, generating plant, power station, or service station of a public utility, or the service rendered thereby, which has once been laid, constructed, opened and used for public business, nor shall be closed for traffic or service thereon, therein or thereover except as provided in Section 504-3. Any railroad or public utility violating the provisions of this section shall forfeit and pay into the state treasury not less than one hundred ($100) dollars, nor more than one thousand ($1,000) dollars, and shall be subject to all other legal and equitable remedies for the enforcement of the provisions of this act.
“Section 504-3. Any such railroad or any political subdivision desiring to abandon, close, or have abandoned, withdrawn or closed for traffic or service all or any part of such main track or tracks, or depot, and any such public utility, or political subdivision desiring to abandon or close, or have abandoned, withdrawn or closed for traffic or service all or any part of such line or lines, pumping stations, generating plant, power station or service station, shall first make application to the Public Utilities Commission in writing who shall thereupon cause reasonable notice thereof to be given, stating the time and place fixed by the commission for the hearing of said application. Upon the hearing of said application said commission shall ascertain the facts, and make its finding thereon, and if such facts satisfy the commission that the proposed abandonment, withdrawal or closing for traffic or service is reasonable, having due regard for the welfare of the public and the cost of operating the service or facility, they may allow the same; otherwise it shall be denied, or if the facts warrant, the application may be granted in a modified form. Provided, however, that *335 should the application ash for the abandonment or withdrawal of any main trach, main pipe line, gas line, telegraph line or telephone toll line, electric light line, water line or steam pipe line, pumping station, generating plant, power station, service station, or the service rendered thereby, in such manner as can result in the permanent abandonment of service between any two points on such railroad, or of service and facilities of any such public utility, no application shall be granted unless the company or public utility shall have operated said trach, pipe line, gas line, telegraph line or telephone toll line, electric light line, water line, or steam pipe line, pumping station, generating plant, power station or service station for a period of at least five years, and such notice shall be given by publication in a newspaper of general circulation throughout any county or municipality which may have granted a franchise to said company or public utility, under which said trach, pipe line, gas line, telegraph line or telephone toll line, electric light line, water line or steam pipe line, pumping station, generating plant, power station or service station is operated or in which the same is located, once a week for four consecutive weeks before the hearing of said application, and notice of said hearing shall be given such county, municipality or public utility in the manner provided for the service of orders of the commission in Section 614-71 of the General Code, and except that the provisions of Sections 504-2 and 504-3 shall not apply to a gas company when removing or exchanging abandoned field lines.
“The provisions of this section shall apply to all such service now rendered and facilities furnished or hereafter built and operated, and an order of the commission authorizing the abandonment or withdrawal of any such service or facility shall not affect rights and *336 obligations of a railroad or public utility beyond the scope of said order, anything in its franchise to the contrary notwithstanding.” (Emphasis added.).
Much of the language in the above statutory sections has no application whatever to railroads. We have indicated, by our emphasis in quoting these sections, the portions which may apply to railroads and which clearly disclose that these sections are not applicable to' an instance such as this, where a railroad, although continuing to operate its main tracks and its depots for railroad purposes, merely discontinues the stopping of one of its trains at a station, especially where other daily trains in both directions will continue to stop at that station.
In considering Section 504-2, General Code, it is apparent that the railroad is not being “required to abandon or withdraw” anything and that nothing is to “be closed for traffic or service”; and that, therefore, the only question involved in the instant case is whether the railroad company proposes to “abandon * * # any main track or tracks or depot or any portion thereof * * * or the service rendered thereby.” It is clear in the instant case that the railroad company does not propose to “abandon” any part of its tracks or to cease rendering train service thereon (i. e., “abandon * * * the service rendered” by any of its main tracks or depots). The words of that section apparently do not apply so long as a railroad continues railroad operations on its main tracks and continues to operate its depots for railroad purposes. This conclusion is fortified by the words of Section 504-3, General Code. That section provides for an application by a railroad only in the instance of a “ railroad * * * desiring to abandon, [or] close * * * for traffic or service all or any part of such main track or tracks, or depot.” The words, “have abandoned, withdrawn or *337 closed,” obviously apply only to a “political subdivision” desiring to “have” that done.
Appellants rely upon the decision of this court in Cincinnati Northern Rd. Co. v. Public Utilities Commission, 119 Ohio St., 568, 165 N. E., 38. In that case, a railroad, seeking to abandon part of the service rendered by it, filed an application to do so with the Public Utilities Commission. By filing such an application, and throughout the proceedings before the commission and this court, that railroad consistently took the position that Section 504-3, General Code, vested in the commission the power to approve or disapprove the proposed partial abandonment of service. In that case, those who opposed the application of the railroad consistently took the same position, that Section 504-3, General Code, vested such power in the commission. It is apparent, therefore, that no controversy was before the commission or before this court in that case on the question whether Section 504-3, General Code, did or did not vest such power in the commission. The question was not even raised in that litigation. That decision and any statements by this court in its opinion cannot therefore be considered or construed as having determined that Section 504-3, General Code, did vest in the commission the power to approve or disapprove of even the partial abandonment of service on railroad tracks which was apparently involved in that case. See State, ex rel. Gordon, City Atty., v. Rhodes, Mayor, 158 Ohio St., 129, 107 N. E. (2d), 206 (paragraph one of the syllabus). The same observations may be made with respect to New York Central Rd. Co. v. Public Utilities Commission, 123 Ohio St., 560, 176 N. E., 219; New York Central Rd. Co. v. Public Utilities Commission, 129 Ohio St., 381, 195 N. E., 566; Village of Paulding v. Public Utilities Commission, 132 Ohio St., 33, 4 N. E. (2d), 694; *338 Village of Millersburg v. Public Utilities Commission, 137 Ohio St., 75, 27 N. E. (2d), 1020; City of Delphos v. Public Utilities Commission, 137 Ohio St., 422, 30 N. E. (2d), 688; Baltimore & Ohio Rd. Co. v. Public Utilities Commission, 160 Ohio St., 67, 113 N. E. (2d), 240; and Detroit, Toledo & Ironton Rd. Co. v. Public Utilities Commission, ante, 317. In onr opinion, the provisions of Section 524, General Code, provide the public with an adequate means of challenging before the commission the adequacy of service rendered by a railroad. See Adena Rd. Co. v. Public Service Commission, 92 Ohio St., 1, 110 N. E., 631.

Order affirmed.

Middleton, Hart, Zimmerman, Stewart and Lamneck, JJ., concur.